STATE of Missouri, Respondent,

v.

Margaret WEST, Appellant.

No. WD 56766.

Missouri Court of Appeals,
Western District.

May 31, 2000.

David Simpson, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., SPINDEN and RIEDERER, JJ.*

PATRICIA BRECKENRIDGE, Chief Judge.

Margaret West appeals from her convictions and sentences following a jury trial for possession of methamphetamine, § 195.202, RSMo 1994,[1] and attempt to manufacture methamphetamine, § 564.011. Ms. West was fined $10,000.00 and sentenced as a prior and persistent offender to two concurrent terms of ten years imprisonment. Because the state failed to produce sufficient evidence to sustain the convictions, the judgment of the trial court is reversed.

### FACTUAL AND PROCEDURAL HISTORY

On April 17, 1998, law enforcement officers obtained a search warrant to search the home of Margaret West and Terry Shelton based on information they received that drugs were present in the residence. A warranty deed confirmed that Ms. West and Mr. Shelton held the property in joint tenancy. When the officers, including Deputy Sheriff Gary Martin and Missouri State Trooper D.J. Hendrick, arrived at the home, they knocked on the door and asked Ms. West if they could enter the house and speak with her. Instead of immediately executing the search warrant, Deputy Martin told Ms. West that they had reason to believe drugs were present in the house and asked her for permission to look around the house. Ms.

---

* Judge Riederer resigned from this court prior to the issuance of the opinion.

1. All statutory references are to the Revised Statutes of Missouri 1994.

West consented to the search. When Deputy Martin asked Ms. West if the house contained any drugs, she told him that she had marijuana in her purse. Ms. West gave the officers the marijuana.

Deputy Martin then asked Ms. West if the house contained any other illegal items. She directed the officers to an office in the house that she identified as Mr. Shelton's room, her joint tenant. Ms. West told the officers that she was not allowed to go into that room and that if anything illegal was present in the house it would be in that office. While the officers were searching the office, Ms. West directed them to a filing cabinet in the room and the officers questioned her about it. She told the officers the locked filing cabinet and its contents belonged to Mr. Shelton and that she did not know the location of the keys. The officers found the keys in the office and opened the filing cabinet. The filing cabinet contained a box of rolling papers, a couple of books about drugs, a mail-order catalog containing information related to ordering ephedrine, approximately two hundred bottles of pseudoephedrine, and $4000.00 in cash. Also in the filing cabinet, the officers found a drug-related catalog entitled "Loompanics Unlimited" with its shipping envelope that had been mailed to Mr. Shelton and blank checks bearing the name "Shelton Trucking." In a desk in the same room, officers found three corners of baggies that are frequently used to package methamphetamine for sale. The officers searched the remainder of the house. In the process of that search, Deputy Martin looked in the refrigerator and freezer in the kitchen, but did not see any illegal items.

After searching the house, Deputy Martin asked Ms. West if a metal shed located approximately 100 feet from the house contained a methamphetamine lab. Ms. West told him that she did not know. Ms. West refused to consent to a search of the shed because she said it belonged to Mr. Shelton. After securing an amended search warrant, the officers entered the locked shed and searched it. The shed contained a number of items commonly used in methamphetamine production. Officers found a flask, tubing, hot plates, rubber gloves, coffee filters, a funnel, a strainer, a blender, lye, cans of acetone, and several jars containing various stages of methamphetamine.

After finding the items in the shed, at the prompting of a Drug Enforcement Administration officer, Deputy Martin reexamined the freezer in the house and found a jar of black liquid partially hidden in the back of the freezer. The black liquid and the various materials found in the house and shed were tested and the tests revealed chemicals related to methamphetamine and its production. The chemicals found included red phosphorus, pseudoephedrine hydrochloride and d-methamphetamine hydrochloride. Each of these materials is an ingredient of methamphetamine, a by-product of the manufacturing process, or completed methamphetamine.

Ms. West was charged with possession of methamphetamine and the attempt to manufacture methamphetamine. After trial by a jury, Ms. West was found guilty. The trial judge fined her $10,000.00 and sentenced her to two concurrent ten-year sentences of imprisonment. Ms. West appeals, challenging the sufficiency of the evidence.

## STANDARD OF REVIEW

This court's review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the jury's verdict. *Id.* All contrary inferences are disregarded. *Id.* Reasonable inferences may be drawn from direct and circumstantial evidence. *See id.* at 412–13. However, the infer-

ences must be logical, reasonable and drawn from established fact. *State v. Friend,* 936 S.W.2d 824, 828 (Mo.App. 1996).

## SUFFICIENCY OF THE EVIDENCE

Ms. West argues in her sole point on appeal that the trial court erred in overruling her motion for judgment of acquittal. Ms. West contends that the evidence presented was insufficient to prove that she knowingly possessed methamphetamine or that she possessed items with the intent to manufacture methamphetamine. Ms. West argues that the state failed to present sufficient evidence that would permit reasonable inferences that she knew about and exercised control over the methamphetamine and other items which could be used in the manufacturing of methamphetamines present in the house and shed on the jointly-held property.

 To convict Ms. West for the possession of methamphetamine the state must prove two elements: (1) that Ms. West had conscious and intentional possession of the controlled substance, either actual or constructive, and (2) that she was aware of the presence and nature of the substance. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). Both elements of this test may be proved by circumstantial evidence. *Id.* "The two prongs of this test are not entirely separate." *Id.* at 588. If the state lacks proof of actual possession, constructive possession may be proved "when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *Id.* In order to prove constructive possession, the state must, at a minimum, establish that the defendant had access to and control over the premises where the substance was located. *Id.*

 Where a defendant has exclusive control of the premises, this factor alone suffices to raise an inference of possession and control of the controlled substance. *Id.* In this case, Ms. West did not have exclusive control of the premises since Ms. West and Mr. Shelton owned the property as joint tenants. In order to show that a person in joint control of the premises knows about the presence of illegal substances and has control over those items, the state must present evidence of "some incriminating circumstance" that raises the inference of such knowledge and control. *Id.* According to the Missouri Supreme Court:

> Where a person is present on premises where drugs are found but does not have exclusive use or possession of the premises, it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submissible case is made. Additional factors are required. Where the *defendant* is present on the premises and if there are additional independent factors showing his knowledge and control, then that is sufficient to withstand a motion for a directed verdict. To justify a conviction in any case on a charge of possession it is necessary to prove that the accused knew of the presence of the forbidden substance and that the same was under his control. In the absence of incriminating circumstances no case is made.

*State v. Wiley,* 522 S.W.2d 281, 292 (Mo. banc 1975). Examples of additional incriminating circumstances that may raise the inference of knowledge and control in a joint possession situation include self-incriminating statements, *id.,* consciousness of guilt, *State v. Dreiling,* 830 S.W.2d 521, 524–25 (Mo.App.1992), routine access to the place where the controlled substance is located; the commingling of the controlled substance with the defendant's personal belongings, *State v. Steward,* 844 S.W.2d 31, 33 (Mo.App.1992), a great quantity of the illegal substance at the scene, *State v. Barber,* 635 S.W.2d 342, 344 (Mo.1982), and the subject of the controversy in public view, *State v. Kerfoot,* 675 S.W.2d 658, 661 (Mo.App.1984). The totality of the circumstances is considered in determining whether sufficient additional incriminating circumstances have been proved. *Purlee,*

839 S.W.2d at 589; *Barber,* 635 S.W.2d at 344.

To convict Ms. West of the second charge of attempting to manufacture methamphetamine in violation of § 564.011, the state must prove two elements: (1) the defendant had the purpose of committing the underlying offense (manufacturing methamphetamine), and (2) the doing of an act which constitutes a substantial step toward the commission of that offense. *See State v. Withrow,* 8 S.W.3d 75, 78–9 (Mo. banc 1999). A "substantial step" is an act that is "strongly corroborative of the firmness of the actor's intent to complete the commission of the offense." Section 564.011; *Withrow,* 8 S.W.3d at 78. The act or conduct that will fulfill the substantial step requirement depends on the facts of the particular case. *State v. Shivelhood,* 946 S.W.2d 263, 266 (Mo.App.1997).

The Supreme Court considered, in *Withrow,* whether there was sufficient evidence of a substantial step toward the manufacture of methamphetamine to convict. 8 S.W.3d at 80. In evaluating the sufficiency of the evidence, the Court applied principles of constructive possession from possession-of-controlled-substance cases. With regard to actual or constructive possession of the materials being used to manufacture the controlled substance, the Court stated:

> If actual possession is not present, as in this case, constructive possession of the drugs or the drug component and apparatus will satisfy [the state's] burden if other facts exist which buttress the inference of the defendant's requisite mental state. *State v. Condict,* 952 S.W.2d 784, 786 (Mo.App.1997); *see also* sec. 195.010(33) (defining the terms actual and constructive possession under the Narcotic Drug Act). Constructive possession requires, at a minimum, evidence that the defendant had access to and control over the premises where the materials were found. *State v. Purlee,* 839 S.W.2d 584, 588 (Mo. banc 1992). Ex-

clusive possession of the premises containing the materials raises an inference of possession and control. *Id.* When the accused shares control over the premises, as here, further evidence is needed to connect him to the manufacturing process. *Id.* The mere fact that a defendant is present on the premises where the manufacturing process is occurring does not by itself make a submissible case. *State v. Barber,* 635 S.W.2d 342, 344–45 (Mo.1982). Moreover, proximity to the contraband alone fails to prove ownership. *State v. Bowyer,* 693 S.W.2d 845, 847 (Mo.App.1985). There must be some incriminating evidence implying that the defendant knew of the presence of the manufacturing process, and that the materials or the manufacturing process was under his control. *Purlee,* 839 S.W.2d at 588.

*Id.* Since the same standard must be met to prove constructive possession of both the methamphetamine and the materials being used to manufacture methamphetamine, we will simultaneously consider whether there is sufficient evidence, beyond Ms. West's joint control of the premises, to prove her knowledge of the presence and her access to and control over the methamphetamine and the materials and equipment necessary to manufacture methamphetamine.

The state argues that Ms. West possessed the requisite knowledge to be convicted of both charges, possession and attempt to manufacture. First, the state claims that Ms. West's demeanor indicated that she knew of illegal activity taking place on her property because she was nervous and "a little shaken up" during the execution of the search warrant. Second, the state maintains that Ms. West must have known of the methamphetamine-related items in the office because she directed the officers to the office and the filing cabinet, telling the officers that if anything illegal was in the house it would be in that room. Third, the state argues that the jury could infer that Ms. West might have

used the rolling papers in the locked filing cabinet at some point to roll marijuana, and that if she did use those papers, she could not help but see the other items in the filing cabinet. Fourth, the state claims that consciousness of guilt may be inferred from the fact that Ms. West gave the officers permission to search Mr. Shelton's office, yet she refused to give them consent to search the shed located behind the house. Fifth, the state asserts that it can be inferred that Ms. West knew about the jar of methamphetamine in the freezer because she had routine access to the freezer. Sixth, the state maintains that Ms. West must have been aware of the smell of methamphetamine production coming from the shed.

 Considering the evidence in the light most favorable to the state and the reasonable inferences to draw therefrom, there is sufficient evidence of corroborating, incriminating circumstances, beyond joint control of the premises, to prove that Ms. West had knowledge of the presence and nature of the methamphetamine and materials to manufacture methamphetamine. There is not sufficient evidence, however, that she intended to or did, in fact, exercise any control over them. Because there must be evidence of both knowledge and intent to control, see *Withrow*, 8 S.W.3d at 80 and *Wiley*, 522 S.W.2d at 292, there is insufficient evidence to prove all the elements of the offense of possession of methamphetamine and the offense of attempt to manufacture methamphetamine.

 The state's evidence that Ms. West appeared nervous, that she had marijuana in her purse and that she directed the officers to the office and the filing cabinet when they asked whether there were other illegal substances in the home is circumstantial evidence that Ms. West was aware of the nature of illegal substances and that she had knowledge that illegal substances were present in the home. Ms. West's nervousness during the search of the house is an incriminating fact

that could be considered in determining whether she had knowledge of the methamphetamine and drug-related items in the house and shed. *See State v. Shinn*, 921 S.W.2d 70, 73 (Mo.App.1996). Ms. West's possession of marijuana is also relevant. The jury could reasonably infer from her marijuana possession that Ms. West had a familiarity with illegal substances and had the intent to possess illegal drugs. *See State v. Dennis*, 990 S.W.2d 78, 81 (Mo.App.1999); *State v. Dudley*, 912 S.W.2d 525, 527 (Mo.App. 1995); *Steward*, 844 S.W.2d at 34–35; *State v. Camden*, 837 S.W.2d 520, 522 (Mo. App.1992). The fact that Ms. West directed the officers to the office and filing cabinet when they inquired whether there was anything else illegal in the house would also allow a jury to reasonably infer that Ms. West had knowledge of the presence in the filing cabinet of the illegal items found there, that is, the items used to manufacture methamphetamine. Additionally, since Ms. West resided in the home, she would have routine access to the freezer where the jar of methamphetamine was found. *Barber*, 635 S.W.2d at 344.

The other evidence relied upon by the state does not demonstrate her knowledge, however. The state asserts that Ms. West must have had access to the contents of the filing cabinet because there were rolling papers in the filing cabinet that Ms. West must have used to consume her marijuana. This is not a reasonable inference from the evidence. There is no evidence that she ever used the rolling papers in the filing cabinet to smoke marijuana.

The state further argues that Ms. West would have known of the manufacturing of methamphetamine on her property because the process of manufacturing marijuana creates a distinctive stench that would have been readily apparent. The evidence does not support this inference. There was no evidence that there was an odor from the manufacture of methamphetamine that could be detected outside

the shed. No officer testified to smelling an odor except inside the shed.

Finally, the state argues that Ms. West's refusal to consent to the officers' search of the shed shows a consciousness of guilt. The state fails to provide any authority for the proposition that a refusal to give consent to search evidences a consciousness of guilt.

Ms. West testified that she consented to a search of the house she jointly shared with Mr. Shelton, but she did not believe she could give consent to search his shed, which she viewed as his personal property. Even if her testimony was disbelieved, Ms. West had a right to refuse consent to search the shed, and her refusal to give consent to search cannot be used to infer wrongful activity. *See State v. Slavin*, 944 S.W.2d 314, 319 (Mo.App.1997).

In considering the totality of the circumstances, there is also evidence that does not support the inference that Ms. West had knowledge of or intended to possess and control the methamphetamine and items used to produce methamphetamine. None of the illegal items was in plain view. The items seized from the office were found in the desk and in a locked file cabinet. The other materials used to produce methamphetamine were found in a locked shed. The state provided no evidence that Ms. West had a key to the filing cabinet in the office or to the shed. In addition, the items of contraband found in the office were found among Mr. Shelton's personal effects, not Ms. West's. There was no evidence that Ms. West's personal belongings were commingled with any of the illegal materials seized or that the materials were located within close proximity to her.

While Ms. West had routine access to the freezer, the jar of black liquid was in the back of the freezer. Neither Deputy Martin nor Trooper Hedrick saw the jar the first time the freezer was searched. Deputy Martin testified that he believed an attempt was made to hide the jar in the back of the freezer and that the

jar could only be seen when looking into the freezer from the side. Trooper Hedrick testified that he was not able to see the methamphetamine in the freezer because it was hidden behind something and he "did not move anything in the refrigerator or freezer." Moreover, even if Ms. West knew about the methamphetamine in the freezer and recognized it as a controlled substance, this knowledge alone fails to support a finding that Ms. West possessed the methamphetamine. *See State v. McClain*, 968 S.W.2d 225, 227 (Mo.App.1998).

Ms. West's possession of marijuana in her purse is incriminating, but other cases have found that similar evidence does not rise to the level of an additional incriminating factor to prove knowledge and control over the methamphetamine and related items located in the locked filing cabinet, back of the freezer, and the shed. *See id.* at 226–227 (finding that the defendant's possession of methamphetamine was insufficient evidence to connect him to bag containing items consistent with "meth lab equipment" that was found in a garage closet, despite the fact the defendant was at the garage and he told the police that he saw another person bring the bag into the garage and where the bag was located); *State v. Moiser*, 738 S.W.2d 549, 558–59 (Mo.App.1987) (holding that despite the fact there was sufficient evidence to prove defendant possessed psilocybin mushrooms located in a box in the dining room, the state provided insufficient evidence that the defendant possessed marijuana located in various other locations in the house).

Because this case involves a situation where the controlled substances and related items were found on jointly-controlled property, the fact that Ms. West had knowledge of the nature of the controlled substances and related items is not enough to sustain a conviction based on possession of the methamphetamine and manufacturing items. *See Wiley*, 522 S.W.2d at 292. As discussed above, the state must establish additional incriminating evidence of her possession. *See id.* An inference of

such knowledge without an inference of intent to possess the items is not enough to support a conviction. *See id.*

For Ms. West to be convicted of possession of the methamphetamine and materials and equipment for methamphetamine production, the state must provide evidence not only that Ms. West had knowledge of the methamphetamine and other items, but also that Ms. West intended to possess those items. *See Withrow,* 8 S.W.3d at 80 (stating that to infer possession of materials used in the manufacturing process of drugs where the defendant lacks exclusive possession of the premises, defendant must have knowledge of the materials and control over them); and *Wiley,* 522 S.W.2d at 292 (stating that to infer possession of a controlled substance where the defendant lacks exclusive possession of the premises, defendant must have knowledge of the substance and control over it). There was sufficient evidence to conclude that Ms. West knew of the existence of the methamphetamine and the materials and equipment for manufacturing methamphetamine. However, considering the totality of the circumstances, the state did not present sufficient evidence to reasonably infer that Ms. West intended to control the methamphetamine or the manufacturing items. *See McClain,* 968 S.W.2d at 227.

Due to the absence of evidence of incriminating circumstances beyond joint control of the premises, there is insufficient evidence of possession of methamphetamine and attempt to manufacture methamphetamine and, thus, no submissible case. Accordingly, the judgment of conviction is reversed. Because the reversal is based upon insufficiency of the evidence, the case is not remanded for a new trial. The cause is remanded to the Circuit Court of Bates County with instructions to discharge the defendant.

SPINDEN, J., concurs.