**STATE of Missouri, Respondent,**

v.

**Dayna M. HENDRIX, Appellant.**

**Nos. WD 59338 and WD 59378.**

Missouri Court of Appeals,
Western District.

April 16, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2002.

Application to Transfer Denied
Aug. 27, 2002.

Draig Johnston, State Public Defender Office, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Philip Koppe, Assistant Attorney General, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Dayna Hendrix appeals her conviction after a jury trial of the class A felony of trafficking in the second degree, § 195.223 RSMo 2000.[1] Because we find that the evidence was insufficient to support the conviction, we reverse.

### Facts

On October 14, 1999, the Buchanan County Drug Strike Force executed a search warrant on an apartment rented by Sheila Knowles. For about six weeks, the Strike Force had performed periodic, drive-by surveillance of the apartment. Hendrix had been observed there on a regular basis, as had Knowles, Raymond Wilkinson, and another unknown woman. Hendrix was not present when the apartment was searched, although she was seen leaving shortly before the warrant was executed, and she returned later that evening. When the warrant was executed Wilkinson and Mario Dydell were present.

When Hendrix returned to the apartment, officers stopped her and told her they were there on a "drug search warrant." Hendrix told the officers "basically" that any "dope" in the apartment either "wasn't hers" or "couldn't be pinned on her." When officers told her that they knew she had been staying at the apartment for the last month or so, Hendrix said, "Who cares, you can't pin any of the dope on me."

The search of the apartment revealed contraband and a small bag of marijuana in the living room, contraband and a yellow

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

rock substance in the bedroom Hendrix slept in when she stayed there, and, in Knowles' bedroom, a digital scale, contraband, and 37 rocks of cocaine base hidden behind a clock on the wall. Hendrix was charged with trafficking based on the 37 rocks found behind Knowles' clock.

Officers found a concealed crack pipe containing a small amount of cocaine on Hendrix's person. Hendrix was arrested. She admitted to using crack earlier that day, and told officers that "a friend" had given it to her. She also said that she had been staying at Knowles' apartment "for the past couple of months" because of problems at home.

Knowles, who was in Kansas City buying crack when the search warrant was executed, was arrested on a later date. She was charged with trafficking in the second degree. She pled guilty to that charge pursuant to an agreement to testify against Hendrix and Wilkinson. In return she received a suspended imposition of sentence and "drug court." Knowles testified that Hendrix and Wilkinson, with whom Hendrix was romantically involved, had lived at her apartment since August 1999. Hendrix did not have a key to the apartment. Hendrix slept in the northwest bedroom but would usually smoke crack with Wilkinson in Knowles' bedroom. Knowles testified that Wilkinson sold crack on a regular basis, and that both women occasionally delivered for him. Knowles further testified that Ms. Hendrix would sometimes keep Wilkinson's crack on her person. She also testified that another man, Mark Cline, also known as L.D., sold "dope" out of her apartment, but she was not sure if he stored his product there. Knowles finally testified that she usually slept on the couch, not in her bedroom, and that the she owned the clock in which the substantial amount of cocaine was discovered.

Wilkinson also pled guilty to a trafficking charge and testified for the State. He testified that he did not live at Knowles' apartment, and that he did not know if Hendrix lived there, but that he saw her there "on occasion." He testified that he also did not have a key to the apartment. He testified that neither woman sold nor delivered drugs for him, although he would give them drugs for their own use. He testified that he did not know about the rocks found in Knowles' clock. He also testified that he did not see L.D. at the apartment the day the search warrant was executed.

Hendrix testified in her own defense. She testified that she did not live at the apartment in question, but rather that she stayed there on occasion. She denied telling officers that she had lived there for the past couple of months. She testified that she usually smoked crack in the northwest bedroom, but that occasionally she would smoke it in Knowles' bedroom. She testified that she received crack from Wilkinson but denied delivering drugs for him. She also denied any knowledge of any of the other drugs or paraphernalia found in the house. She did not recall telling officers that they could not "pin any dope you find on me." She also testified that L.D. had been packaging "dope" in the apartment the day the search warrant was executed.

James Ginn testified for the defense that Hendrix lived with him during October 1999, but that she would occasionally spend nights elsewhere.

## Analysis

Hendrix raises two points on appeal. In her first point, Hendrix argues that the trial court erred in overruling her motion for judgment of acquittal, in accepting the jury's guilty verdict, and in sentencing her, because there was insufficient evidence to

support her conviction of trafficking in the second degree. She argues that the evidence did not prove beyond a reasonable doubt that she constructively possessed the cocaine base found behind the clock.

Because we reverse on the first point, we do not discuss the allegation of instructional error raised in her second point.

 Review of claims challenging the sufficiency of evidence is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998). We view the evidence in a light most favorable to the verdict, considering all favorable inferences and disregarding all evidence and inferences contrary to the verdict. *Id.* We must consider whether, on this evidence, a reasonable juror could find each of the elements of the crime beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). A reviewing appellate court does not act as a "super juror" but must defer to the trier of facts' determination if a submissible case has been made by the State. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998).

Section 195.223.3 provides that a person commits the crime of trafficking drugs in the second degree if she possesses or has under her control, purchases or attempts to purchase, or brings into this state more than two grams of a mixture or substance which contains cocaine base. Section 195.223.3(2). The State elected to charge that Hendrix possessed the cocaine base.

 In order to prove that Hendrix possessed the cocaine base, the State was required to prove that she 1) had conscious and intentional possession of the 6.2 grams of cocaine base, either actual or constructive, and 2) was aware of the presence and nature of the substance. *State v. West*, 21 S.W.3d 59, 63 (Mo.App.2000). Because Hendrix did not actually possess the cocaine base, the State was required to prove that she constructively possessed it. In order to show constructive possession, the State must prove that Hendrix had access to and control over the premises where the cocaine base was found. *Id.* Exclusive possession of the premises raises an inference of knowledge and control. However, in a case of joint possession of the premises, more is required. Where the defendant shares possession of the premises with others, as was the case here, additional evidence of some incriminating circumstances must also be presented to permit the inference of knowledge and control over the substance. *Id.*

In *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975), the Missouri Supreme Court stated:

Where a person is present on premises where drugs are found but does not have exclusive use or possession of the premises, it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submissible case is made. Additional factors are required. When the defendant is present on the premises and if there are additional independent factors showing his knowledge and control, then that is sufficient to withstand a motion for directed verdict. To justify a conviction in any case of possession it is necessary to prove that the accused knew of the presence of the forbidden substance and that the same was under his control. In the absence of incriminating circumstances no case is made.

*Id.* at 292.

Various additional incriminating circumstances have been held to permit an inference of knowledge and control in a case involving joint possession of premises:

self-incriminating statements, *Wiley* at 292–93; consciousness of guilt, *State v. Dreiling*, 830 S.W.2d 521, 524–25 (Mo.App. 1992); routine access to the place where the controlled substance is found; the commingling of the controlled substance with a defendant's personal belongings, *State v. Steward*, 844 S.W.2d 31, 33 (Mo. App.1992); a great quantity of the illegal substance at the scene, *State v. Barber*, 635 S.W.2d 342, 344 (Mo.1982); the substance in public view and access by defendant, *State v. Kerfoot*, 675 S.W.2d 658, 661 (Mo.App.1984).

■ If the defendant is not present when the substance is discovered, the circumstantial evidence sufficient to show constructive possession should be scrutinized even more closely to make certain that it points to the defendant and not just circularly to joint possession. We must look at the totality of the circumstances to determine whether the State has proved sufficient additional incriminating circumstances. *State v. Smith*, 33 S.W.3d 648, 653 (Mo.App.2000).

The State acknowledges the need to present additional evidence connecting Hendrix with the controlled substance found in the clock. *State v. Norville*, 23 S.W.3d 673, 676 (Mo.App.2000).

A review of the evidence reveals that there were no additional incriminating circumstances present that could have raised an inference that Hendrix exercised control of the cocaine base.

■ First, the State contends that Hendrix made a self-incriminating statement. The State imparts significance to the fact that Hendrix made her statement ("Who cares; you can't pin any of the dope on me.") *before* the cocaine base was discovered. This, the State argues, constituted evidence from which the jury could have inferred that Hendrix was aware of the cocaine base behind the clock. However, Hendrix made this statement not spontaneously, but rather in response to an officer informing her they were executing a drug warrant.

Considering, as we must, the totality of the circumstances, this statement was not self-incriminating. It may imply knowledge that there was cocaine base hidden behind the clock; more likely it implies knowledge of the marijuana and paraphernalia strewn about the common areas of the apartment. In either case, the statement, "you can't pin any of the dope on me" does not imply control of the substance. In fact, it points to the opposite.

In *State v. Morris*, 41 S.W.3d 494 (Mo. App.2000), a similar comment to an officer did not suffice to show possession of contraband. The *Morris* defendant was present during the search, but he did not live at the apartment. *Id.* at 496. When he was asked if there were any other drugs in the place, he replied, "No, you got it all." *Id.* at 497. This court held that the statement might have shown knowledge of the drugs, but it did not show control. *Id.* at 498.

■ The State also argues that Hendrix exhibited a consciousness of guilt when she attempted to avoid her association with Wilkinson by refusing to tell police that she was driving his car. This behavior certainly may indicate that Hendrix did not want to be linked to Wilkinson, but it cannot be interpreted as evidence that she knew of or exercised control over the cocaine base.

■ The State next argues that an additional incriminating circumstance by which it can show knowledge and control is routine access to the place where the substance is found. Clearly Hendrix had routine access to the bedroom in question. However, considering the totality of the

circumstances, Hendrix's access to the bedroom does not show control of the cocaine base found concealed there.

*West* involved a defendant convicted of possession of methamphetamine and attempt to manufacture methamphetamine. 21 S.W.3d at 61. The defendant owned the house in joint tenancy with Terry Shelton. *Id.* Officers discovered a jar of black liquid in the freezer in the kitchen. *Id.* at 62.

In reversing *West,* we noted that although West's undisputed access to the kitchen might show that she knew about the substance in the freezer,[2] it did not support a finding that West possessed that substance. *Id.* at 67.

The State attempts to distinguish *West* on the grounds that there was no evidence that West sold for his co-occupant, while in the instant case, Knowles testified that Hendrix would deliver drugs for Wilkinson. The State ignores, however, that its own evidence showed that Wilkinson did not know of the drugs behind the clock. He denied any such knowledge.

Knowles further testified that Wilkinson always kept his stash on his person or sometimes Hendrix kept it on her person for him. Although this testimony may, along with other evidence, show Hendrix's familiarity with illegal drugs, Wilkinson's illegal activities, and knowledge that drugs were sometimes on the premises, does not justify an inference that she possessed or controlled the drugs found behind Knowles' clock. We also note that Hendrix was not present in the apartment when the drugs were found, but other persons were. At least one other person sold drugs from Knowles' apartment and

had been present the morning before the search.

There is no evidence that Wilkinson stored his drugs behind the clock. And we note that Knowles was never asked whether she (or Hendrix) had any knowledge of the drugs in question. Although the State suggests in its brief that Hendrix would help Wilkinson package cocaine, our review of the transcript citation does not support that claim. There was no testimony that Hendrix packaged cocaine base for Wilkinson or anyone else.

The State also argues that there was no testimony in *West* from the joint possessor of the premises that he was unaware of the substances, whereas here Wilkinson testified that he knew nothing about the cocaine base behind the clock. The State agues that by process of elimination since Hendrix was the only joint possessor of the apartment, it was reasonable to infer that the cocaine behind the clock was hers. The jury was, of course, free to believe such testimony, difficult as it would be to reconcile with Wilkinson's testimony that he pled guilty to trafficking of that same cocaine base. However, *West* is not distinguishable on this fact, because Knowles, like the joint possessor in *West,* did *not* testify that she was unaware of the cocaine base hidden behind her clock.

The State argues that the paraphernalia and marijuana found about the apartment constitute evidence from which the jury could conclude that Hendrix had knowledge of the presence and character of the drugs found behind the clock. The State relies upon those cases holding that the presence of large quantities of illegal drugs and paraphernalia at the scene where a defendant is arrested permit an inference of awareness of the presence and

---

**2.** We note that in *West,* as well as in this case, the substance was well concealed within the

room the defendant had access to.

character of illegal drugs. *See* e.g., *Morris*, 41 S.W.3d at 497. Although the presence of the other illegal substances might indicate that Hendrix knew about the cocaine base concealed behind the clock, it does not indicate that she exercised control over it. And, although not dispositive, it is significant that Hendrix was not present in the apartment at the time of the search while others were and had been since the time she left the apartment.

The record contains no indication that any of Hendrix's personal possessions were found commingled with the cocaine base, or that the substance was in public view.

This case, like *West*, presents circumstances that might indicate that the defendant had knowledge of the substance, but no circumstances that could indicate that the defendant exercised control over the substance. Evidence of both is required to support a conviction. *Smith*, 33 S.W.2d at 653.

Because there were no additional incriminating circumstances that permitted an inference that Hendrix exercised control over the cocaine base concealed behind the clock, the evidence was insufficient to show beyond a reasonable doubt that Hendrix constructively possessed that cocaine base. The judgment is, therefore, reversed and appellant ordered discharged.

HAROLD L. LOWENSTEIN, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.