**STATE of Missouri, Plaintiff–Respondent,**

v.

**Dewayne JACKSON, Defendant–Appellant.**

**No. SD 31571.**

Missouri Court of Appeals, Southern District, Division One.

April 18, 2013.

Rosalyn Koch, Columbia, MO, for Defendant/Appellant.

Chris Koster, Attorney General, and Andrew C. Hooper, Assistant Attorney General, Jefferson City, MO, for Plaintiff/Respondent.

GARY W. LYNCH, P.J.

Dewayne Jackson ("Defendant") appeals his conviction following a jury trial upon a charge by information of the class A felony of trafficking drugs in the second degree, in violation of section 195.223.[1] Defendant contends that the evidence was insufficient to link him with any of the cocaine base seized during a search of a house he shared with others when he was not present and near the drugs when the drugs were discovered. We disagree and affirm Defendant's conviction.

### Factual and Procedural Background

On August 25, 2010, acting upon the belief that Defendant was trafficking crack cocaine, Highway Patrol Sergeant Mark McClendon met with a confidential informant whom he provided with a digital recorder for audio and a one for video and $35 in currency. The serial numbers on the money, in denominations of one $20 bill and three $5 bills, were recorded by McClendon. The confidential informant was directed to go to Arnita Ross's home on South Kimball in Maiden to buy drugs.

McClendon sent other officers to the South Kimball address to set up for surveillance while he checked on Defendant's whereabouts at his home on North Decatur. McClendon was familiar with Defendant's car. McClendon returned to South Kimball and parked two to three blocks away from Ross's home, where he was able to observe activity on the street side and front yard.

When he arrived at Ross's home, the confidential informant gave the money for the drugs to Ross and waited in the backyard while Ross waited for Defendant in front of her house. McClendon heard from officers watching Defendant's vehicle at the North Decatur address that Defendant had departed that location, and a short time later, McClendon observed Defendant in his vehicle approach and park on the street in front of Ross's house on South Kimball. When Defendant drove up, Ross approached the driver's side of Defendant's vehicle, and after a few minutes, she returned to her house, and Defendant drove away. Ross returned to her backyard with "a heat-sealed baggie" containing crack cocaine, which she gave to the confidential informant. In the meantime, McClendon followed Defendant as he returned to the North Decatur address. Later, McClendon met with the confidential informant who turned over the crack cocaine he purchased from Ross and the recording devices. McClendon then obtained a search warrant for the North Decatur address.

That night, as officers proceeded to North Decatur to execute the search warrant, two officers stopped Defendant when they encountered him driving a 1986 Pontiac[2] on Howard Street. With Defendant's

---

1. References to section 195.223 are to RSMo Supp.2001.

2. The license number on this vehicle matched the license number on the vehicle driven by

Defendant earlier in the day during his stop in front of Ross's residence on South Kimball. The Department of Revenue registration for this vehicle was in Defendant's name with his address shown as the North Decatur address.

permission, the officers searched Defendant's vehicle and found a fully loaded .38–caliber revolver on the driver's side on the floorboard and $1,020 cash in small denominations on Defendant's person. The serial numbers on one $20 bill and one $5 bill in Defendant's possession matched serial numbers recorded by McClendon when he provided the cash for the drug buy to the confidential informant earlier that day. No drugs were found. Believing that Defendant was intoxicated, however, the officers left Defendant in the custody of another trooper in order for them to proceed on to the North Decatur address to assist in executing the search warrant. After failing field sobriety tests, Defendant was arrested and transported to jail.

At Defendant's residence on North Decatur, officers executed the search warrant. A trained drug dog alerted officers to concealed quantities of drugs in the home. Under a cushion of a couch in the living room, officers found at least two bags containing fifteen pieces of crack cocaine and a small bag of marijuana. In a bedroom used by Defendant, they also found two bags of cocaine and one bag containing crack cocaine[3] hidden in the door jamb of a closet door. In all, 22.15 grams of cocaine base and 54.27 grams of powder cocaine were found inside the home.

A digital scale was discovered in the top drawer of a dresser in the same bedroom, where officers also observed clothing belonging to a male. Defendant's driver's license was stuck in a mirror on a dresser, and mail addressed to Defendant was found in the room. Officers also searched a Mercury automobile registered to Defendant that was parked outside under a carport. Inside, they found $11,020 in currency. One of the $20 bills bore the same serial number officers had previously recorded prior to providing it for another purchase of drugs two days earlier. Later that evening, Defendant admitted to two officers that he lived at the North Decatur address and that "he'd stayed there for four to five years."

Defendant testified at his jury trial. He stated that his girlfriend and her brother lived in the house on North Decatur and he was a visitor there sometimes. He had no knowledge about drugs found in the house and denied selling or distributing drugs. When asked about the money found on his person and in his automobile, he said he used the cash to buy used vehicles, which he later repaired and resold. Defendant admitted he had not been employed since 2004. Defendant could account for only approximately $8,000 that he earned repairing and reselling used automobiles since that time.

Following the close of all the evidence, defense counsel moved for judgment of acquittal, which the trial court denied. Defendant was convicted on one count of trafficking drugs in the second degree, a class A felony, and sentenced to ten years' imprisonment. He now appeals.

In his sole point relied on, Defendant alleges that the trial court erred in overruling his motion for judgment of acquittal, contending that the State did not prove the charge against him beyond a reasonable doubt because it did not present sufficient evidence that linked Defendant with the cocaine base found in the house, in that the home where the drugs were found was shared with others and Defendant was not present or near the drugs when the search ensued.

---

**3.** "Crack cocaine" is a common reference to cocaine base. *See State v. Wilson,* 359 S.W.3d 60, 61 (Mo.App.2011).

### Standard of Review and Applicable Principles of Law

■ Upon review of the sufficiency of the evidence supporting a criminal conviction, we accept as true all evidence and inferences drawn therefrom that are favorable to the verdict and disregard all contrary evidence and inferences in order to determine whether a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Gonzalez*, 235 S.W.3d 20, 24 (Mo.App.2007). An "inference" is a deduction or conclusion reasonably drawn from facts established by proof. *Id.* All inferences favorable to the verdict must be logical and reasonably drawn from the evidence, and this court will not supply missing evidence or consider speculative, unreasonable, or forced inferences. *Id.* "This Court need not believe that the evidence at trial established guilt beyond a reasonable doubt, but instead must determine whether ... any rational trier of fact could have found each essential element of the crime beyond a reasonable doubt." *State v. Richardson*, 296 S.W.3d 21, 23–24 (Mo.App.2009).

■ "The State may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime." *State v. Jones*, 296 S.W.3d 506, 509 (Mo.App.2009). "Circumstantial evidence is given the same weight as direct evidence and the jury is free to make reasonable inferences from the evidence presented." *Id.* "A verdict is not flawed because it was based on circumstantial evidence or because that circumstantial evidence failed to exclude every reasonable theory of innocence." *State v. Middlemist*, 319 S.W.3d 531, 537 (Mo.App. 2010). "Weighing the evidence to determine whether the defendant was guilty beyond a reasonable doubt is the function of the jury and not the reviewing court." *State v. Weide*, 812 S.W.2d 866, 869 (Mo. App.1991).

### Discussion

Section 195.223.3, with exceptions not applicable here, provided that one commits the crime of trafficking drugs in the second degree "if he possesses or has under his control, purchases or attempts to purchase, or brings into this state more than two grams of a mixture or substance described in subsection 2 of this section which contains cocaine base." Subsection (2) under this statute further provided, "If the quantity involved is six grams or more the person shall be guilty of a class A felony." Section 195.223.3(2).

■ In the underlying prosecution, Defendant was charged with a class A felony, and the information alleged that Defendant "possessed 6 grams or more of a mixture or substance containing a cocaine base, a controlled substance, knowing of its presence and illegal nature." To sustain a conviction for trafficking in the second degree, it was necessary for the State to prove that Defendant (1) "had conscious and intentional possession of the ... cocaine base, either actual or constructive, and [ (]2) was aware of the presence and nature of the substance." *State v. Hendrix*, 81 S.W.3d 79, 83 (Mo.App.2002). "Evidence of both is required to support a conviction." *Id.* at 86.

■ Here, Defendant was not present when law enforcement found the cocaine base, thus he was not in actual possession of it. Absent actual possession, the State must establish constructive possession. *Id.* "[C]onstructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). "[P]roof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found." *Id.* "Reasonable inferences

drawn from circumstantial evidence can establish the elements of possession and knowledge." *State v. Hernandez*, 880 S.W.2d 336, 339 (Mo.App.1994).

■ In the underlying case, there was no direct or circumstantial evidence that Defendant had exclusive possession of the home where the cocaine base was found, so we must analyze the case as if others also had joint possession of the home. While exclusive control of the premises where the cocaine base was found "is enough to raise an inference of possession and control of the substance[,]" in a case of joint possession, additional evidence connecting the accused with the illegal drugs is required. *Purlee*, 839 S.W.2d at 588. "The State must present some incriminating circumstance that implies that the accused knew of the presence of the drugs and that the same were under his control." *Id.* at 587. "A defendant's access to the areas where drugs are found and the presence of a large quantity of drugs both support an inference of possession and control, when consistent with the totality of the circumstances." *State v. Jackson*, 304 S.W.3d 791, 795 (Mo.App. 2010).

■ "Superior access to contraband accessible by more than one person is an incriminating fact[ ]" when the State is required to "produce additional evidence to connect the accused to the controlled substance[ ]" in cases where there is joint control over an area. *Richardson*, 296 S.W.3d at 24. That a defendant likely had routine access to the drugs is also relevant. *State v. Woods*, 284 S.W.3d 630, 640 (Mo. App.2009). Here, there was evidence from which it could be reasonably inferred that the bedroom where the bags with larger amounts of cocaine were found was occupied by Defendant. Officers found his driver's license on the mirror of a dresser, male clothing, and mail addressed to Defendant in that room. Personal belongings

in close proximity to the drugs infer knowledge and control. *Id.* Furthermore, "[t]he presence of a large amount of drugs together with access tends to show conscious possession." *Hernandez*, 880 S.W.2d at 339 (citing *Purlee*, 839 S.W.2d at 588).

■ Also, evidence of the value of the illegal drugs allegedly possessed is relevant in demonstrating knowing and intentional possession of the drugs. *State v. Keller*, 870 S.W.2d 255, 260 (Mo.App.1994). Sergeant McClendon testified that the 22 grams of crack cocaine found in the door jamb of the bedroom closet door had a street value of $4,400, and the 54 grams of cocaine powder had a street value of "[r]oughly $20,000 or so.... Give or take." Such amounts are "not typical of that used for personal consumption" but are typical when trafficking drugs. *See id.* Also relevant in this regard is the presence of a digital scale that was found inside a dresser drawer in that bedroom. These items collectively "render[ ] incredible defendant's claim that he was unaware of the presence of the substances." *See id.*

■ When Defendant was stopped and arrested, he had $1,020 in small denominations in his pocket. The presence of large sums of money held in small denominations may be consistent with drug dealing. *See Jackson*, 304 S.W.3d at 794. Furthermore, serial numbers on one $20 bill and one $5 bill in those bills in Defendant's possession matched the serial numbers recorded by McClendon when he provided the cash for the drug buy to the confidential informant earlier in the day. An additional $11,020 was found in the Mercury automobile parked at the house and registered to Defendant. The serial number of one $20 bill in that batch of bills matched the serial number of a $20 bill provided by law enforcement for a drug purchase April 23, 2010, just two days earlier. Defendant

admitted the cash found in the vehicle was his. However, his accounting for how he came to possess such a large sum of cash was not credible. Defendant had not been employed since 2004 and conceded he had earned only $8,000 since that time by refurbishing used vehicles and re-selling them. A reasonable fact-finder could reasonably infer that Defendant was dealing drugs on a regular basis, kept his drug money either on his person or in his car parked at the premises where he resided, and had a nearby place to store his drug inventory, i.e. his bedroom in the residence where he had stayed during the last four to five years.

Furthermore, a jury may also consider the defendant's dishonesty regarding a material fact " 'as affirmative evidence of guilt.' " *Woods,* 284 S.W.3d at 640–41 (quoting *Reeves v. Sanderson Plmbg. Prod., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Here, Defendant denied to the jury living at the house on North Decatur, whereas considerable evidence—male clothing, Defendant's driver's license, and mail addressed to him in the room where drugs were found; both of his vehicles registered at that address; his vehicle with over $11,000 in it parked and left unattended there; and his own admission to officers that it was his residence for the last four to five years—indicated to the jury that he did in fact reside there. Moreover, Elisha Thomason, a corrections officer at Dunklin County jail who booked Defendant, testified that when asked during the booking process for an address, Defendant provided her the North Decatur address. At trial, Defendant denied doing so, which the jury could have also considered dishonest. Further, Defendant also denied ever being at Ross's home earlier that day when the confidential informant purchased drugs from Ross that were supplied by Defendant, yet multiple law enforcement officers saw him there. Nor could Defendant credibly explain how he legitimately came to possess the money found in his vehicle or upon his person.

Based upon the totality of the foregoing circumstances, a reasonable juror could have reasonably inferred that Defendant had conscious, intentional, and constructive possession of the cocaine base concealed in the closet door jamb in his bedroom at the North Decatur address and was aware of its presence and nature. Thus, the evidence presented here was sufficient for the jury to find Defendant guilty beyond a reasonable doubt. Point one is denied.

### Decision

Defendant's conviction is affirmed.

NANCY STEFFEN RAHMEYER and WILLIAM W. FRANCIS, JR., JJ., concur.