**STATE of Missouri, Plaintiff–Respondent,**

v.

**Michael Daniel HOWARD, Defendant–Appellant.**

**No. 21915.**

Missouri Court of Appeals, Southern District, Division Two.

July 22, 1998.

**904**

Gwenda R. Robinson, Asst. Public Defender, St. Louis, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kevin F. Hennessey, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

BARNEY, Judge.

Michael Daniel Howard (Defendant) appeals from the trial court's judgment which found him guilty of the Class D felony of unlawful use of a weapon,[1] the Class B misdemeanor of driving while intoxicated,[2] and the Class A misdemeanor of unlawful use of drug paraphernalia.[3] The Circuit Court of Taney County sentenced Defendant to the Missouri Department of Corrections for a term of two years and ordered Defendant to pay a $500.00 fine for his driving while intoxicated conviction and a $500.00 fine for his possession of drug paraphernalia conviction. We affirm.

Defendant assigns two points of trial court error. In his first point, Defendant challenges the sufficiency of the evidence to support his conviction for unlawful use of a weapon. In his second point, Defendant alleges that the trial court erred in overruling his motion to suppress the evidence used at trial against him.[4]

On April 15, 1996, at approximately 12:00 a.m., Trooper Mark Green of the Missouri State Highway Patrol observed a 1973 Dodge automobile traveling at a relatively slow speed on Highway 165 in Taney County, Missouri. The automobile was traveling in a westerly direction. The driver of this automobile was Defendant.

Initially, Trooper Green thought that perhaps the driver was lost. Trooper Green followed the vehicle for a short distance before Defendant abruptly turned the vehicle onto a private, gravel driveway. Trooper Green stopped his patrol car near the intersection of Highway 165 and the gravel drive.

---

1. § 571.030.1(1), RSMo 1994.

2. § 577.010, RSMo 1994.

3. § 195.233, RSMo 1994.

4. We note that Defendant did not raise any assignments of error in his brief directed to his convictions for driving while intoxicated, *supra*, and possession of drug paraphernalia, *supra*. "Failure to raise an assignment of error directed to the appeal of the judgment of conviction constitutes an abandonment of that appeal." *State v. Cook*, 945 S.W.2d 90, 91 (Mo.App.1997).

Defendant stopped his vehicle and exited it and began walking aggressively toward Trooper Green's patrol car. Defendant ceased acting aggressively when he discovered that Trooper Green was a law enforcement officer.

Trooper Green asked Defendant what the trouble was and Defendant responded: "Sir, I wouldn't even have had to pull over if your lights hadn't been so bright." Trooper Green explained to Defendant that his patrol car carries a lot of weight in its trunk, which causes the headlights to beam upwards, appearing that the high beams are engaged when they are not. Trooper Green testified that this explanation to Defendant "seemed to calm him down a little bit."

Trooper Green asked Defendant for his driver's license. Defendant told Trooper Green that "I'm suspended on a previous DWI." Trooper Green confirmed the suspension by contacting his office at Troop D in Springfield.

Trooper Green then placed Defendant under arrest for driving while his license was revoked and placed him in the front, passenger's seat of his patrol car. Trooper Green questioned Defendant about the identity of the person who was a passenger in the vehicle Defendant was driving. Defendant responded that her name was "Regina" but was unable to recall her last name. Defendant told Trooper Green that he had known Regina for approximately "eight or nine years." Trooper Green asked Defendant whether there was anything illegal in his vehicle. Defendant responded, "Not that I know of."

Trooper Green walked to Defendant's vehicle to interview Regina. Trooper Green stated that she was "extremely cooperative" during his entire encounter with her. Regina produced identification. Trooper Green asked Regina if she knew where the vehicle's registration and proof of insurance were kept. She stated that she didn't know but agreed with Trooper Green that the documents might be located in the glove compartment. Regina opened the glove compartment and several papers fell out, including

what Trooper Green recognized as a "bag of marijuana." Regina stated "I didn't know it was in there." Trooper Green confiscated the bag and placed it in his patrol car.

Trooper Green resumed interviewing Defendant and told him that he was also under arrest for possession of a controlled substance. He asked Defendant whether there was anything else illegal in his vehicle. Defendant responded "I don't know." Trooper Green testified that he was concerned with his own safety and asked Defendant whether he would consent to a search of his vehicle. Defendant did not consent. Trooper Green stated that he was concerned about his safety because it was late at night, dark, no other officers were in the area, and there was still a passenger sitting in the vehicle Defendant had been operating.

Trooper Green walked back to the vehicle and asked Regina to exit the vehicle and stand in front of it. Trooper Green then conducted a search of the front seat of the vehicle. Trooper Green found nothing under the seat but did discover the presence of loaded .38 caliber handgun, wedged between the seat cushions of the front seat. Trooper Green stated that the weapon was readily accessible by the driver of the vehicle. Trooper Green confiscated the weapon, unloaded it, and placed it in his patrol car. Trooper Green asked Defendant why he did not tell him about the revolver. Defendant did not respond. Trooper Green then informed Defendant that he was also under arrest for unlawful use of a weapon.

Trooper Green read Defendant his *Miranda* rights and transported him to the Taney County Sheriff's Department. While there, Defendant was thoroughly searched. Located in Defendant's jacket was a syringe and a plastic scale. Trooper Green noticed "fresh needle tracks on [Defendant's] arms" and asked him, "What are you shooting, Methamphetamine?" Trooper Green stated that Defendant said "No. I'm hooked on cocaine...." Defendant told Trooper Green that the last time he "shot cocaine" was at 10:00 p.m. that night. Trooper Green con-

ducted several sobriety tests on Defendant while at the sheriff's department. He failed all of them.

At trial, Defendant did not testify nor present any evidence. Following the close of the State's evidence, the trial court sustained Defendant's motion for judgment of acquittal on charges of driving while license revoked and possession of a controlled substance.[5]

## I.

■ In his first assignment of error, Defendant maintains that the trial court erred in overruling his motion for judgment of acquittal on the unlawful use of a weapon charge because there was insufficient evidence adduced during the trial to prove beyond a reasonable doubt that Defendant knowingly carried the .38 caliber revolver on or about his person. He relies on *State v. Foster*, 930 S.W.2d 62 (Mo.App.1996) in support of his contention.[6]

■ "We review the denial of a motion for acquittal to determine if the state adduced sufficient evidence to make a submissible case." *Foster*, 930 S.W.2d at 63. In determining whether the evidence is sufficient to support a conviction, we accept as true all reasonable inferences drawn from the evidence and disregard all evidence and inferences to the contrary. *Id.* at 63–64. "An 'inference' is a conclusion drawn by reason from facts established by proof." *Id.* at 64.

■ "We look to whether there was sufficient evidence from which a reasonable [finder of fact] might have found the defendant guilty beyond a reasonable doubt." *Id.* at 64. "We are bound to consider the inferences favorable to the state unless the contrary inference is such that it would necessarily give rise to a reasonable doubt in a reasonable [finder of fact's] mind." *Id.*

■ Defendant was charged with, *inter alia*, violating section 571.030.1(1), RSMo 1994, which provides:

1. A person commits the crime of unlawful use of weapons if he knowingly:

(1) Carries concealed upon or about his person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use . . . .

"The essential elements of the offense are the knowing concealment and accessibility of a functional lethal weapon." *State v. Purlee*, 839 S.W.2d 584, 590 (Mo. banc 1992).

■ "A weapon is accessible if it is in such close proximity to the accused as to be within his easy reach and convenient control." *Id.* Trooper Green testified that the "fully loaded" .38 caliber revolver, found in the vehicle Defendant was operating, was easily accessible. Trooper Green also testified that Defendant "could have easily grabbed—reached and grabbed it with his right hand and fired it within a very short amount of time." The revolver was found wedged between a crevice of the front seat cushions of the vehicle Defendant was operating.

■ Additionally, the "test of concealment is whether a weapon is so carried as

5. The trial court judge stated:
It looks like marijuana. The officer believes it was marijuana. But I believe there's better practice on the part of the State. And this goes by judge by judge. We have a criminal lab. We pay lots of tax dollars for it. Anything that's found should be tested. I'll sustain your Judgment for Acquittal as to Count IV, possession.

6. In *Foster,* after defendant was pulled over by police he exited his vehicle and stood leaning against it with his left hand behind him and inside the open driver's window. *Id.* at 63. He was apparently gripping an object that the officer

could not identify. Defendant subsequently fled the scene in his vehicle and abandoned it in a field. *Id.* He and his passenger fled on foot and were apprehended the next day. *Id.* The officer searched the abandoned vehicle and found a "tire knocker" concealed under the driver's seat. *Id.* The Eastern District of this Court reversed defendant's conviction for unlawful use of a weapon, holding that there was insufficient evidence to conclude that defendant, who did not own the vehicle, knowingly concealed the "tire knocker" found underneath the seat of the vehicle. *Id.* at 64–65.

not to be discernable by ordinary observation." *Id.* "A weapon is not concealed simply because it is not discernable from a single vantage point if it is clearly discernable from other positions." *Id.* (quoting *State v. Cavin*, 555 S.W.2d 653, 654 (Mo.App.1977)). "It may be concealed, however, where it is discernable only from one particular vantage point." *Id.* "[W]hen a loaded firearm is carried in a vehicle within easy reach of the occupants, 'ordinary observation' is tested from the vantage point of an approaching officer." *Purlee*, 839 S.W.2d at 590.

Trooper Green testified during an examination by the trial court judge as follows:

Q. And the revolver was located in the approximate middle of the front bench seat; is that correct?

A. Yes. It would have been directly to his right.

Q. I believe you have already stated it was well within his reach; is that correct?

A. Yes, sir, it was.

Q. And the butt of the gun, would it have been possible for him to grab the butt of the gun and pull it out in a fairly quick manner?

A. Yes, very easily. He could have easily reached down, grabbed the whole gun, had a firm grip on it, and discharged it.

Q. Was the butt of the gun visible? Do you know if the butt of the gun would have been visible to the driver from your observations in searching the car?

A. Yes.

Following the trial court judge's inquiry, the State followed up on re-direct examination of Trooper Green as follows:

Q. [W]ould you have been able to have observed that weapon with just common observation from standing outside the vehicle?

A. No.

Q. So you were able to observe that weapon only after you got in the car and got down and looked down into the crack between the seats; is that correct?

A. Yes. I got down in a position over the area between the two seats, and then I observed the butt of the revolver in between the seats.

Q. Approximately how far down was it, if you recall?

A. I would say approximately a few inches, maybe.

Q. Would you describe it as being in plain sight?

A. No, definitely not.

The facts of this case are clearly distinguishable from *Foster*. The arresting officer clearly saw that the loaded .38 caliber revolver was easily and readily accessible by Defendant and, concealed from ordinary observation; further, it was located immediately to the right of where Defendant had been seated in the vehicle.[7] Recall also that Trooper Green testified that the butt of the weapon would have been "visible" to Defendant while he was operating the vehicle.

Trooper Green also noted that after questioning the passenger in the vehicle about the revolver, he was fully satisfied that she had no prior knowledge of its presence in the vehicle.

The facts and circumstances in this case permit a reasonable inference that Defendant "knowingly" concealed the loaded revolver on or about his person. *See Purlee*, 839 S.W.2d at 590; *Foster*, 930 S.W.2d at 63–64. All the essential elements of the offense of unlawful use of weapons under section 571.030.1(1) were satisfied by the State. *See Purlee*, 839 S.W.2d at 591; *see also State v. Crone*, 399

---

7. Whether Defendant actually owned the revolver is of no significance. Ownership of a weapon is of no significance where the circumstances permit the trier of fact to infer that the defendant was aware of the presence of the weapon and intended to conceal it. *State v. Boyd*, 492 S.W.2d 787, 792 (Mo.1973).

**908**

S.W.2d 19, 21 (Mo.1966);[8] *State v. Mulconry*, 270 S.W. 375, 378 (Mo.1925).

The trial court's decision to overrule Defendant's motion for judgment of acquittal as it related to the charge of unlawful use of weapons was therefore not in error. Point denied.

## II.

In his second and final assignment of error, Defendant maintains that the trial court erred in overruling his motion to suppress because the State failed to show that under the totality of the circumstances, Trooper Green had a reasonable and articulable suspicion that Defendant was involved in any criminal activity to justify Trooper Green's "investigatory stop." Defendant asserts that the evidence seized from the automobile should have been suppressed because it was "fruit of the poisonous tree." *See State v. Miller*, 894 S.W.2d 649, 654 (Mo. banc 1995).

Our review of a ruling on a motion to suppress is limited to a determination of whether there is sufficient evidence to sustain the trial court's decision. *State v. Sims*, 952 S.W.2d 286, 290 (Mo.App.1997). "We consider the facts in the light most favorable to the trial court's ruling." *Id.* When determining whether evidence should have been suppressed, we review the record of the pre-trial hearing on the motion to suppress and the record made at trial prior to the introduction of the evidence sought to be suppressed. *Id.* Appellate courts defer to the trial court's determinations as to the credibility of witnesses and the weight of the evidence. *State v. Downen*, 952 S.W.2d 807, 810–11 (Mo.App.1997).

Defendant incorrectly characterizes the encounter between him and Trooper Green as having resulted from an "investigatory stop."

The record in this matter reveals that the encounter between Defendant and Trooper Green was precipitated solely by Defendant.

Defendant was traveling west on Highway 165 at an unusually slow speed. Trooper Green was merely observing Defendant's progress, following behind, when Defendant abruptly turned his vehicle onto a rough, gravel driveway that Trooper Green described as inaccessible by a vehicle like the one Defendant was operating. Trooper Green stopped his patrol car on the highway and did not follow Defendant onto the gravel driveway. It was at this point that Trooper Green first activated his emergency lights to warn traffic behind him of the presence of his stopped patrol car on the highway.

Defendant stopped his vehicle on the gravel driveway, hastily exited it and charged aggressively toward Trooper Green's patrol car. When Defendant realized that he was charging toward a law enforcement officer, he became less aggressive. After Defendant was greeted by Trooper Green and following a brief conversation concerning the brightness of Trooper Green's patrol car headlights, Trooper Green was well within his authority to ask Defendant to produce a driver's license for the purpose of identification. "Suspicious conduct and movements can be considered among various factors pointing toward probable cause" for a law enforcement officer to conduct a reasonable investigation. *State v. Day*, 900 S.W.2d 656, 658 (Mo.App.1995). "A reasonable investigation ... may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." *State v. McNaughton*, 924 S.W.2d 517, 523 (Mo.App.1996).

Defendant was unable to produce a driver's licence upon Trooper Green's request. Defendant explained to Trooper Green that his driver's license was suspended for a previous DWI conviction. Once Trooper Green

---

8. Our Supreme Court noted in *Crone* that:

As to intent to conceal, which defendant claims was not shown, ... [w]here the state's evidence shows that the weapon is concealed, it would, no doubt, be a sufficient prima facie showing that he intended to conceal the same because from such proof it might well be inferred or presumed that the person intended to do that which, in fact, he did do. ...

*Crone*, 399 S.W.2d at 21 (citations omitted).

discovered that Defendant was driving without a driver's license, he had probable cause to arrest Defendant. *State v. Poindexter*, 941 S.W.2d 533, 535 (Mo.App.1997).

 After Defendant was placed under arrest for driving without a license, Trooper Green endeavored to inspect the vehicle's registration and proof of insurance. To fulfill that task, Trooper Green questioned the vehicle's remaining occupant regarding her identity and knowledge of the location of the necessary documents. She agreed that the documents Trooper Green needed might be located in the glove compartment and voluntarily opened it. From the glove compartment fell, in plain view, the documents Trooper Green was interested in along with a bag of what Trooper Green believed was marijuana.[9] Trooper Green confiscated the bag. At this point, Trooper Green had probable cause to search the vehicle for evidence of additional contraband. *See Day*, 900 S.W.2d at 658.

 "Probable cause may arise when the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to produce in a person of reasonable caution a belief that the contents of the automobile offend the law."[10] *Id.; see McNaughton*, 924 S.W.2d at 524; *see also Burkhardt*, 795 S.W.2d at 407. Trooper Green's subsequent search of the interior of the vehicle revealed the presence of a concealed, loaded .38 caliber revolver, located immediately to the right of where Defendant was previously sitting when he was operating the vehicle. *See* discussion, Part I., *supra*.

The record before this Court clearly contains substantial evidence supporting the trial court's decision to overrule Defendant's motion to suppress. *See Burkhardt*, 795 S.W.2d at 407. The record adequately supports the trial court's determination that the .38 caliber revolver seized in the search of the vehicle Defendant had been operating was admissible in evidence.[11] *See id.* Point denied.

The judgment is affirmed.

MONTGOMERY and PARRISH, JJ., concur.

9. "[L]ooking into an automobile at objects open to public view is not a search within the purview of the Fourth Amendment." *State v. Burkhardt*, 795 S.W.2d 399, 407 (Mo. banc 1990).

10. "A search of a vehicle on the highways pursuant to probable cause that contraband, weapons, or evidence of a crime are within the vehicle is a well-established exception to the Fourth Amendment search warrant requirement." *McNaughton*, 924 S.W.2d at 524 (citing *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *State v. Villa-Perez*, 835 S.W.2d 897, 902 (Mo. banc 1992)).

11. In the argument portion of his second point, Defendant argues that the evidence of the marijuana, drug paraphernalia, and his statements made at the sheriff's department relating to his intoxication should have been suppressed in addition to the .38 caliber revolver. First, we note that Defendant was acquitted on the possession of a controlled substance charge. Thus, whether the marijuana evidence should have suppressed is moot. Second, Defendant did not challenge his convictions for driving while intoxicated or for possession of drug paraphernalia in this appeal. The evidence supporting those crimes has no relevance to the unlawful use of weapons charge, the only conviction challenged in this appeal. Third, Defendant did not raise these issues in his point relied on. "An appellate court will not consider on appeal issues in the argument portion of the brief if they are not included in the point relied on." *Day*, 900 S.W.2d at 658 n. 3 (citing *State v. Richards*, 795 S.W.2d 428, 434 (Mo.App.1990)).