STATE of Missouri, Plaintiff–
Respondent,

v.

Robert T. WOOD, Defendant–Appellant.

No. SD 29471.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 11, 2010.

William J. Swift, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., Robert J. Bartholomew, Asst. Atty. Gen., for respondent.

JEFFREY W. BATES, Presiding Judge.

Robert Wood (Defendant) appeals his convictions for unlawful use of drug paraphernalia and unlawful use of a weapon. He contends the evidence was insufficient to support his conviction on either offense. Because neither contention has merit, the judgment is affirmed.

In March 2008, Defendant was charged by information with committing the following offenses: Count I—the class C felony of tampering in the first degree in violation of § 569.080.1(2); Count II—the class D felony of resisting a lawful stop in violation of § 575.150.5; Count III—the class D felony of unlawful use of drug paraphernalia in violation of § 195.233 RSMo (2000); and Count IV—the class D felony of unlawful use of a weapon in violation of § 571.030.1(1).[1] Following a jury trial, Defendant was found guilty on all counts. The jury recommended a seven-year sentence on Count I and four-year sentences on Counts II–IV. The trial court followed those recommendations when imposing the sentences. The court ordered that the sentences on Counts I, II and IV run concurrently with each other and that the sentence on Count III run consecutively with the sentence on Count II.

At the close of all of the evidence, Defendant filed a motion for judgment of acquittal as to all counts. On appeal, Defendant contends the trial court erred by overruling the motion for judgment of acquittal as to Counts III and IV. In a jury-tried case, an appellate court reviews a trial court's ruling on a motion for judgment of acquittal to determine whether the State made a submissible case. This requirement is satisfied if a reasonable juror could find each element of the crime beyond a reasonable doubt. *State v. Rousan*, 961 S.W.2d 831, 841 (Mo. banc 1998); *State v. Jeffries*, 272 S.W.3d 883, 883 (Mo.App. 2008). In making that determination, we view the evidence and all reasonable inferences derived therefrom in a light most favorable to the verdict and disregard any contrary evidence and inferences. *State v.*

1. All references to statutes are to RSMo Cum. Supp. (2007) unless otherwise specified.

*Goodin,* 248 S.W.3d 127, 129 (Mo.App. 2008). "Deference should be given to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony." *State v. Johnson,* 244 S.W.3d 144, 152 (Mo. banc 2008). So viewed, the following evidence was adduced at trial.

In the latter part of August 2007, a blue 2004 Dodge Ram Quad Cab pickup truck (the pickup) was stolen from an automobile dealership in Joplin, Missouri. During the evening hours of February 2, 2008, an Anderson, Missouri police officer began pursuing two subjects in the pickup because the vehicle reportedly had stolen license plates on it. The officer requested assistance from the Missouri State Highway Patrol (MSHP). MSHP troopers Grant Hendrix (Trooper Hendrix) and Kenneth Sanders (Trooper Sanders) responded to the request for assistance.

Trooper Sanders drove his patrol car to just north of Goodman on Highway 71. He parked his vehicle on the east shoulder of Highway 71, facing north, and waited to become involved in the pursuit. Trooper Hendrix drove his patrol car south on Highway 71 toward Anderson and exited onto Highway 59. The pickup drove directly past Trooper Hendrix and turned north onto the northbound lanes of Highway 71. Trooper Hendrix followed and became the lead vehicle in the pursuit. The pickup crossed the median and began driving north in the southbound lanes of Highway 71. Trooper Sanders observed the pickup cross the median in his rearview mirror and joined the pursuit. Both troopers headed north on Highway 71, paralleling the pickup. All three vehicles were traveling approximately 100 miles per hour.

As the pickup approached the intersection of Highway 71 and Highway AA, it drove up the southbound exit ramp and turned west. Trooper Sanders also crossed the median and drove up the exit ramp. At that point, his patrol car became the lead pursuit vehicle. Trooper Hendrix exited on the northbound ramp and continued west on Highway AA behind Trooper Sanders' vehicle. The pickup turned north on Jaguar Road. It was approximately one car length ahead of Trooper Sanders. His vehicle's headlights were illuminated, and he had a spotlight shining on the pickup's back glass. Trooper Sanders saw two white males inside. The driver was wearing a dark blue hat. The passenger was wearing a red and black hat. There was a significant difference in the appearance of the two hats. Trooper Sanders used his radio to provide a description of the men.

With both troopers in pursuit, the pickup continued north on Jaguar Road, east on Highway 60 and back into the northbound lanes of Highway 71. A Newton County deputy deployed tire deflation spikes, which the pickup struck. The damage to the tires caused the vehicle to leave the highway, enter a wooded area and become wedged between several trees. The driver's side door was jammed shut by a sapling. The pickup was still running, and its headlights were illuminated.

Trooper Sanders stopped his patrol car approximately 20 yards behind and on the driver's side of the pickup. Trooper Hendrix's patrol car was directly behind Trooper Sanders' vehicle. The headlights on both patrol cars were illuminated. Trooper Sanders had not lost sight of the pickup since his radio call, and the pickup never paused long enough for the driver and passenger to switch places. Trooper Sanders exited his vehicle and saw one person run in front of the pickup's headlights, heading east. This subject was wearing a red and black hat and brown Carhart coveralls. Troopers Sanders and Hendrix followed on foot. As they ran

past the pickup, they both looked inside and saw that there was no one else in the vehicle. Trooper Sanders watched the subject wearing the red and black hat go into an open field. Sometime later, this subject was found lying down in the field. He was arrested by Trooper Sanders and later identified as Billy Cushman (Cushman). When Cushman was arrested, he was wearing a red and black hat. With the aid of a heat-sensing device, the second subject was located under a cedar tree south of the pickup on the passenger side of that vehicle. This subject, who was arrested by Trooper Hendrix, was later identified as Defendant. When he was found, he was wearing a dark blue hat and a black leather coat. During a search incident to arrest, a used syringe was found in Defendant's left jacket pocket.

After placing Cushman in a patrol car, Trooper Sanders performed an inventory search of the pickup. Drug paraphernalia and a blackjack were found in the driver's side door pocket. Inside the cab, Trooper Sanders also found some marijuana, mace and a couple of knives. One was an Imperial knife in a sheath with a seven-inch blade. This knife was tucked between the driver's seat and the center seat with the handle sticking up, within the driver's easy reach and control. In the bed of the pickup, Trooper Sanders found a red duffel bag. Cushman said the bag did not belong to him. It contained tubing, duct tape, rubber gloves, coffee filters and glass pie plates with a reddish substance on them. To Trooper Sanders, these items appeared to be drug paraphernalia that could be used to manufacture methamphetamine. At his request, Sergeant James Musche (Sgt. Musche) was sent to the scene.

Sgt. Musche, a MSHP drug control officer, was trained in how to identify and clean up clandestine methamphetamine labs. In the pickup, Sgt. Musche found an unopened, one-gallon can of acetone and a red duffel bag containing approximately 20 items. The red duffel bag contained: a plastic funnel; assorted rolls of tape; used plastic tubing; leather and latex gloves; spatulas; a large, white ceramic plate covered with red phosphorus; some syringes; a film canister with crystallized iodine residue on the inside; a grinder used to crush pseudoephedrine tablets; assorted glassware; a large pyrex baking dish; a ten-cup coffee pot; coffee filters; a 20–ounce soda bottle with a yellowish clear liquid in it; a light bulb drug-smoking device; a toothbrush and part of a turkey baster. These were items of drug paraphernalia that Sgt. Musche frequently encountered in a clandestine methamphetamine lab.[2]

At trial, Defendant chose to represent himself pro se. During closing argument, Defendant said, "It's been stated there was a syringe found in my inside coat pocket. You want me to admit it? I'll tell you right here right now, that was mine." Defendant also admitted that the syringe was drug paraphernalia as defined by § 195.233. Finally, he told the jury that "I throughout my life have used drugs. I will not deny it."[3]

---

2. The tubing could be used to introduce acid into the methamphetamine oil. The methamphetamine salt could be placed in the pyrex baking dish to dry. The acetone could be poured on top of the methamphetamine salt to evaporate and form crystal methamphetamine. The funnel could be used to introduce chemicals into the soda bottle. The tape could be used to tape the tubing to the bottle or the reaction vessel. The coffee pot could be used as the reaction vessel. The gloves could be used to protect a person's hands from chemicals or to avoid leaving fingerprints.

3. Because Defendant voluntarily made these admissions of fact before the jury, his statements served as substitutes for evidence and obviated the need for any additional proof of

*Point I—Unlawful Use of*
*Drug Paraphernalia*

 In Defendant's first point, he contends the trial court erred in overruling Defendant's motion for judgment of acquittal filed at the close of all of the evidence. Defendant argues the evidence was insufficient to support his conviction on Count III for unlawful use of drug paraphernalia. This count charged Defendant with a violation of § 195.233, which states:

1. It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or an imitation controlled substance in violation of sections 195.005 to 195.425.

2. A person who violates this section is guilty of a class A misdemeanor, unless the person uses, or possesses with intent to use, the paraphernalia in combination with each other to manufacture, compound, produce, prepare, test or analyze amphetamine or methamphetamine or any of their analogues in which case the violation of this section is a class D felony.

"The *corpus delicti* of this crime requires proof that the defendant possessed at least two items of paraphernalia and had the intent to use those items in combination with each other to manufacture methamphetamine." *State v. Daggett*, 170 S.W.3d 35, 44 (Mo.App.2005). Both possession and intent can be proven by circumstantial evidence. *State v. Glowczewski*, 168 S.W.3d 100, 104 (Mo.App.2005).

Count III of the information alleged that Defendant had committed the class D felony of possession of drug paraphernalia with intent to use because "[Defendant] possessed filters, tubing, red phosphorus and an unknown liquid which were drug paraphernalia, knowing of its presence and nature, with intent to use, the paraphernalia with [sic] combination with each other to manufacture, compound, produce, prepare, test or analyze amphetamine or methamphetamine or any of their analogues." [4] According to Defendant, there was insufficient evidence to prove beyond a reasonable doubt that he, rather than Cushman, possessed the drug paraphernalia found in the bed of the pickup. This Court disagrees.

 The items of drug paraphernalia identified in Count III of the information were all found in the red duffel bag in the pickup bed. Defendant was not in actual possession of that bag when he was arrested. Therefore, the issue is whether the evidence was sufficient for the jurors to find beyond a reasonable doubt that Defendant was in constructive possession of drug paraphernalia in that bag. *State v. Power*, 281 S.W.3d 843, 849 (Mo.App.2009). Insofar as relevant here, constructive possession of this drug paraphernalia occurred if Defendant had the power and the intention at a given time to exercise dominion or control over the items in the red duffel bag either directly or through another person. *See Power*, 281 S.W.3d at 848–49; *Glowczewski*, 168 S.W.3d at 105; § 195.010(34). At a minimum, this required evidence that Defendant had access to and control over the pickup where the red duffel bag containing drug paraphernalia was found. *State v. Mickle*, 164 S.W.3d 33, 43 (Mo.App.2005).

these facts. *State v. Roberts*, 948 S.W.2d 577, 588 (Mo. banc 1997).

4. Methamphetamine is a Schedule II controlled substance. *See* § 195.017.4(3)(c) RSMo Cum.Supp. (2007).

■ In the case at bar, it was undisputed that the pickup was stolen. There was no evidence that tended to prove either Defendant or Cushman actually stole the pickup, but both of them were occupying the pickup when the pursuit began. Therefore, this appears to be a case involving joint control of the pickup by Defendant and Cushman. "In cases involving joint control of an automobile, as here, a defendant is deemed to have both knowledge and control of items discovered within the automobile, and, therefore, possession in the legal sense, where there is additional evidence connecting him with the items." *Mickle*, 164 S.W.3d at 43. Additional incriminating circumstances that will support an inference of knowledge and control include: (1) being in close proximity to drugs and drug paraphernalia in plain view of the police; (2) finding a defendant's personal belongings with the paraphernalia; (3) the presence of weapons in the vehicle; (4) consciousness of guilt; and (5) admissions by the defendant. *See State v. Meanor*, 863 S.W.2d 884, 889 (Mo. banc 1993); *Glowczewski*, 168 S.W.3d at 105; *Mickle*, 164 S.W.3d at 43–44; *State v. Kimberley*, 103 S.W.3d 850, 858 (Mo. App.2003). In determining whether the evidence of additional incriminating circumstances is sufficient to support an inference of knowledge and control, we look at the totality of the circumstances. *State v. Farris*, 125 S.W.3d 382, 388 (Mo.App. 2004).

In the case at bar, all of the additional incriminating circumstances identified above were present. The jurors could reasonably infer that Defendant had been driving the pickup. When Trooper Sanders performed the inventory search of that vehicle, he discovered drug paraphernalia in the driver's door pocket and marijuana in the cab. Defendant was sitting in close proximity to the marijuana and drug paraphernalia, and these items were within his

easy reach. *See Meanor*, 863 S.W.2d at 889; *Mickle*, 164 S.W.3d at 45. At trial, Defendant admitted that the syringe found in his jacket pocket belonged to him and that the syringe was drug paraphernalia prohibited by § 195.233. Defendant also admitted that he had used drugs throughout his life. *See Kimberley*, 103 S.W.3d at 859–60. Additional syringes and a light bulb drug-smoking device were found in the red duffel bag. During questioning by Trooper Sanders, Cushman said the bag did not belong to him. The jurors could reasonably infer that syringes, light bulb drug smoking device and other drug paraphernalia in the red duffel bag belonged to Defendant. *See Mickle*, 164 S.W.3d at 45 (noting that the defendant's possession of a syringe, which could be used to inject liquid methamphetamine, was evidence that tended to connect him with the other meth-related items found in his vehicle). Defendant exhibited consciousness of guilt by fleeing from the police. *See Glowczewski*, 168 S.W.3d at 105–06. Trooper Sanders found a blackjack in the driver's side door pocket as well as mace and two knives in the cab. The Imperial knife was within Defendant's easy reach and control. The presence of these weapons in the pickup supported the inference that Defendant was aware of the presence of the methamphetamine-related drug paraphernalia in the vehicle and that the weapons were intended to protect this cargo in transit. *See Mickle*, 164 S.W.3d at 45.

After examining the totality of the circumstances, we conclude that the State presented sufficient evidence of additional incriminating circumstances to reasonably permit the inference that Defendant had knowledge of, and control over, the drug paraphernalia in the red duffel bag. Because the evidence was sufficient to make a submissible case that Defendant constructively possessed the drug parapherna-

lia in that bag, the trial court correctly overruled Defendant's motion for judgment of acquittal filed at the close of all the evidence. Point I is denied.

### Point II—Unlawful Use of a Weapon

■ Defendant's second point also challenges the trial court's denial of Defendant's motion for judgment of acquittal filed at the close of all of the evidence. Defendant argues the evidence was insufficient to support his conviction on Count IV for unlawful use of a weapon. This count charged Defendant with a violation of § 571.030. In relevant part, this statute states that "[a] person commits the crime of unlawful use of weapons if he or she knowingly: (1) Carries concealed upon or about his or her person a knife ...." § 571.030.1(1).[5]

■ Count IV of the information alleged that Defendant had committed the class D felony of unlawful use of a weapon because he "knowingly carried concealed upon or about his person two large knives, a blackjack and a wooden billy club, which said weapons were readily capable of lethal use." At trial, however, the only aspect of the foregoing allegation the State sought to prove was that Defendant knowingly carried the Imperial knife concealed on or about his person. The essential elements of the offense of unlawful use of a weapon are "the knowing concealment and accessibility of a functional lethal weapon." *State v. Mace,* 203 S.W.3d 254, 257 (Mo.App. 2006); *State v. Coyne,* 112 S.W.3d 439, 442 (Mo.App.2003). It is undisputed that the Imperial knife was a functional lethal weapon. The evidence was sufficient for the jurors to conclude that Defendant was the person driving the pickup. Trooper Sanders testified that he found the Imperial knife tucked between the driver's seat and the center seat in the pickup, where it was within Defendant's easy reach and control. Thus, it was accessible to him. *State v. Purlee,* 839 S.W.2d 584, 590 (Mo. banc 1992) (holding that a weapon is accessible if it is in such close proximity to the defendant as to be within his easy reach and convenient control); *State v. Howard,* 973 S.W.2d 902, 906–07 (Mo.App.1998) (holding that weapon wedged between a crevice of the front seat cushions directly to the right of the defendant-driver was accessible to him). The evidence also was sufficient to prove that the Imperial knife had been concealed. According to Defendant, however, there was insufficient evidence to prove beyond a reasonable doubt that he knowingly concealed the Imperial knife. This Court disagrees.

■■ As noted above, the State presented evidence that the Imperial knife was concealed right beside Defendant at the edge of the driver's seat. "When there is proof of concealment on or about the person, there is an inference of intent from the commission of that act." *State v. Jordan,* 495 S.W.2d 717, 720 (Mo.App.1973); *see State v. Crone,* 399 S.W.2d 19, 21 (Mo. 1966). Therefore, the State's evidence that the Imperial knife was concealed was a sufficient prima facie showing to create the inference that Defendant intended to conceal this weapon. *State v. Rice,* 490 S.W.2d 27, 28 (Mo.1973); *Crone,* 399 S.W.2d at 21; *Howard,* 973 S.W.2d at 908 n. 8; *State v. Hornbuckle,* 746 S.W.2d 580, 587–88 (Mo.App.1988); *State v. Simmons,* 716 S.W.2d 427, 430 (Mo.App.1986). In addition, we have already held in deciding

---

5. As used in this subsection, the word "knife" is defined to mean "any dagger, dirk, stiletto, or bladed hand instrument that is readily capable of inflicting serious physical injury or death by cutting or stabbing a person. For purposes of this chapter, 'knife' does not include any ordinary pocketknife with no blade more than four inches in length[.]" § 571.010(10) RSMo (2000).

Point I that the evidence was sufficient for the jurors to reasonably infer that Defendant constructively possessed the drug paraphernalia in the red duffel bag. That paraphernalia consisted of items frequently found in a clandestine methamphetamine lab. The presence of the blackjack in the driver's door pocket and the mace and two knives in the cab supported the inference that Defendant had these weapons in the vehicle to protect this drug paraphernalia and any drugs that might be produced by using it. *See Purlee,* 839 S.W.2d at 589; *State v. Mickle,* 164 S.W.3d 33, 45 (Mo.App.2005); *State v. Wilkerson,* 796 S.W.2d 388, 396 (Mo.App.1990). The jury could consider all of this evidence as well in deciding the issue of whether Defendant knowingly concealed the Imperial knife. *State v. Pruitt,* 556 S.W.2d 63, 66 (Mo.App.1977). Defendant's assertion at trial that Cushman was the one who concealed that knife merely presented a disputed factual issue for the jury to decide. *See Rice,* 490 S.W.2d at 28. Point II is denied.

The judgment of the trial court is affirmed.

BARNEY and BURRELL, JJ., Concur.